**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA STATE AFL-CIO, TRUCK DRIVERS & HELPERS LOCAL NO. 728, UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 1996 )<br><br>Plaintiffs, )<br><br>vs. )<br><br>SAM OLENS, ATTORNEY GENERAL OF THE STATE OF GEORGIA, JOHN NATHAN DEAL, GOVERNOR OF THE STATE OF GEORGIA )<br><br>Defendants. ) | Civil Action<br>No. 1:13-cv-03745-WCO |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Since this Court entered its Order on July 20, 2015, plaintiffs have narrowed their suit from a wholesale facial challenge to Georgia's "right to work" statute (enacted via 2013 Ga. Laws 192 (the "Act") and codified in O.C.G.A. §§ 34-6-20 through 34-6-26) to a facial challenge of only three Act provisions, alleging that

the provisions are preempted under the Supremacy Clause and thus violate 42 U.S.C. § 1983.  This narrowing has materially altered the landscape of the allegations and legal theories at issue, and plaintiffs' remaining facial challenges should be dismissed as a matter of law because they do not state a valid claim for *Garmon* preemption (or any other type of express or implied preemption).  Indeed, at least two of plaintiffs' three potential references to *Garmon* preemption are no longer even at issue in this case.

Plaintiffs' claims should also be dismissed because they predicate their § 1983 claim on alleged Supremacy Clause violations.  But as the United States Supreme Court recently confirmed in the *Armstrong* case, the Supremacy Clause does not create a private right of action—and even plaintiffs' broad allegation that the National Labor Relations Act ("NLRA") has been violated does not state a valid claim for a § 1983 action and thus does not cure this deficiency.

Because there are no material facts in dispute in this case and the Court can rule on defendants' motion as a matter of law, defendants respectfully request that plaintiffs' remaining claims be dismissed under Fed. R. Civ. P. 12(c).

## PROCEDURAL HISTORY

The Georgia General Assembly passed Act. No. 192 of the Georgia 2013 Session Laws (the "Act") during the 2013 legislative session.  Plaintiffs filed a

facial challenge to the Act on November 12, 2013, seeking both injunctive and declaratory relief.  Specifically, plaintiffs claim the Act is preempted by federal labor law and thus seek relief pursuant to 42 U.S.C. § 1983 and the Supremacy Clause of the United States Constitution.  *See* Pls.' Compl. [Dkt. 1].   On February 24, 2014, plaintiffs filed an Amended Complaint.  Pls.' Am. Compl. [Dkt. 5].

On March 21, 2014, Defendants moved to dismiss plaintiffs' Complaint in its entirety.  Defs.' Mot. to Dismiss [Dkt. 7].   On July 20, 2015, Defendants' Motion to Dismiss was granted in part and denied in part, thus dismissing plaintiffs' preemption challenges to O.C.G.A. § 34-6-20, O.C.G.A. § 34-6-20.1, and a portion of O.C.G.A. § 34-6-21(a).   Order, July 20, 2015 [Dkt. 24]. In its Order, this Court also encouraged the parties to address a number of questions related to plaintiffs' facial challenge to the Act.  *Id.* at 38.

Following the Court's order, and after multiple meet-and-confer sessions between the parties, plaintiffs narrowed their claims to challenge only three Sections of the Act: Sections 3(d), 4, and 5 (O.C.G.A. §§ 34-6-21(d); 34-6-25; and 34-6-26).  *See* Joint Prelim. Report & Disc. Plan, Aug. 27, 2015 at 2 [Dkt. 27]. Plaintiffs also confirmed that they would seek only a facial challenge to these three Sections of the Act, and would not pursue an as-applied challenge.  *See id.* at 2 n.1 ("Plaintiffs' suit is a facial challenge.") & 11 ("[P]laintiffs have represented that

they seek only a facial (and not an as-applied) challenge to Sections 3(d), 4, and 5 of 2013 Ga. Laws 192.").

## STATUTES AT ISSUE

Plaintiffs' narrowed action challenges only three portions of the Act.

**Section 3(d) (O.C.G.A. § 34-6-21(d)).** Section 3(d) of the Act states that employers and labor organizations shall not be "forced to enter into any agreement, contract, understanding, or practice . . . that subverts the established process by which employees may make informed and free decisions regarding representation and collective bargaining rights provided for by federal labor law." Though Plaintiffs claim that Section 3(d) is unconstitutional and violates § 1983 because it "regulate[s] conduct that is governed and protected by federal labor law," they cite no specific provision of federal law that conflicts with Section 3(d). *See* Am. Compl. ¶¶ 38, 40. Plaintiffs further allege that because Section 3 is preempted, it violates 42 U.S.C. § 1983. *Id.* ¶ 40.

**Sections 4 and 5 (O.C.G.A. § 34-6-25 and O.C.G.A. § 34-6-26).** Sections 4 and 5 allow employees to revoke at any time their written authorization for payroll deductions of monies to be sent to unions.[1] *See* O.C.G.A. §§ 34-6-25(a) &

---

[1] Sections 4 and 5 specifically exempt any agreement in existence prior to July 1, 2013. *See* O.C.G.A. §§ 34-6-25(b); 34-6-26(b).

4

34-6-26(a).  Plaintiffs allege that these Act provisions conflict with a provision of federal law, 29 U.S.C. § 186(c)(4), which plaintiffs claim "preempts all state laws which purport to regulate voluntary written payroll authorizations from employee wages of dues to labor organizations involved in interstate commerce." *See, e.g.*, Am. Compl. ¶¶ 27-28.  Plaintiffs further allege that because Sections 4 and 5 are preempted and violate the Supremacy Clause, they also violate 42 U.S.C. § 1983. *Id.* ¶ 28.

## ARGUMENT AND CITATION OF AUHORITY

### I.  Legal Framework

A Rule 12(c) motion for judgment on the pleadings "is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts"—that is, when judgment may be rendered as a matter of law.  *See Bouboulis v. Scottsdale Ins. Co.*, 860 F. Supp. 2d 1364, 1369-70 (N.D. Ga. 2012) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  A court's evaluation of a complaint under a Rule 12(c) motion is similar to that under a Rule 12(b)(6) motion: it "must contain sufficient factual matter . . . to state a claim for relief that is plausible on its face."  *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949

(2009)).  Thus, even though a court should at the 12(c) stage "accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party," *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010), "the same benefit is not afforded to bare 'legal conclusions.'" *Bouboulis*, 860 F. Supp. 2d at 1370 (quoting *Iqbal*, 129 S. Ct. at 1949).  Neither "labels and conclusions" nor "formulaic recitation[s] of the elements of a cause of action" are sufficient to support "a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct., 1955 (2007).

## II. Plaintiffs' Purported References to *Garmon* Are "Threadbare," Are No Longer At Issue In This Case, And In Any Event Are Insufficient to Support a Claim of *Garmon* Preemption.

Plaintiffs' narrowing of the provisions of the Act they now challenge eliminates the *Garmon* preemption allegations previously at issue, and underscores just how limited and bare-bones their purported *Garmon* allegations were in the first place.  Without being able to rely on a valid claim for *Garmon* preemption, and having failed to allege facts to support any other type of preemption, plaintiffs' preemption claims fail as a matter of law.

To support a claim of implied preemption,[2] plaintiffs typically must show that "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" (field preemption), or that state law "actually conflicts with federal law" such that "compliance with both federal and state regulations is a physical impossibility" or that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (conflict preemption).  *Hillsborough Cty. v. Automated Med. Labs.*, 471 U.S. 707, 713 (1985) (internal citations and quotations omitted). In the context of labor law, two additional preemption doctrines are also available: under the *Garmon* doctrine, states "must defer to the exclusive competence of the National Labor Relations Board" when an activity is actually or "*arguably* subject to § 7 or § 8 of the [NLRA]," whereas the *Machinists* doctrine turns on whether "Congress intended that the conduct involved be unregulated because left [sic] to be controlled by the free play of economic forces."  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959) (emphasis added); *Machinists v.*

---

[2] As Defendants noted in their Motion to Dismiss, and as evidenced in Plaintiffs' Amended Complaint, Plaintiffs do not allege express preemption—that is, that an express statement in federal law declares the Act preempted.  *See* Am. Compl.; Mot. to Dismiss at 12 [Dkt. 7-1].

*Wis. Employment Rels. Comm'n*, 427 U.S. 132, 140 (1976) (internal citation and quotations omitted).

The plain text of plaintiffs' Amended Complaint shows that the vast majority of their preemption allegations most closely resemble conflict and field preemption, and not any type of specialized preemption doctrine. For example, plaintiffs allege that:[3]

- The Act "regulates conduct that is *specifically governed* by federal labor law" (Am. Compl. ¶ 23);

- Conduct addressed in the Act is "*governed exclusively* by federal labor law") (*Id.* ¶¶ 34, 37-38);

- 29 U.S.C. § 186(c)(4) is "*in direct conflict*" with parts of the Act (*Id.* ¶¶ 27-28);

- The Labor Management Relations Act "*fully occupies the field* of conduct regulating voluntary payroll deduction revocability" (*Id.* ¶ 28);

- "[F]ederal labor law *fully occupies the field* of conduct in the *field* of selection of bargaining representatives and the procedures associated therewith" (*Id..* ¶ 41);

- "[F]ederal labor law *fully occupies*, and thus preempts, *the field* of collective bargaining and the rights and duties of

---

[3] Italics have been added for emphasis.

8

employers and labor organizations engaged in non-violent labor disputes." [4] (*Id.* ¶ 45)

Indeed, in a forty-nine paragraph Amended Complaint, plaintiffs make only three references that reasonably could be construed as referencing the hallmark *Garmon* language ("arguably"),[5] and make no reference whatsoever to *Machinists*. And although the Court's initial Order contemplated that plaintiffs may have claims under these labor-specific preemption doctrines, the narrowing of plaintiffs' claims has also narrowed the legal theories available to them.  For the reasons explained below, plaintiffs fail to state a claim for both *Garmon* and *Machinists* preemption doctrines.

*First*, two of plaintiffs' three potential references to *Garmon* preemption— including the reference cited in this Court's Order[6]—are no longer at issue in this case, and therefore cannot serve as the basis for plaintiffs' purported *Garmon* claims.   Plaintiffs make these two references in a section of the Amended Complaint that focuses on Code provisions providing for judicial remedies such as

---

[4] *See infra,* pp. 12-13, for cases showing why these allegations also fail to meet the basic pleading standard required to support a claim of preemption.

[5] *See also* Order at 12 (emphasizing *Garmon's* "arguably" language).

[6] *See* Order at 21 n.6 (citing Am. Compl. ¶ 47 ("the provisions of federal labor law fully occupy the field of regulating conduct prohibited or protected or arguably prohibited or protected" by the NLRA)).

criminal penalties and injunctions.  Am. Compl. ¶¶ 43-49; *see also id.* ¶ 46 ("[T]he State of Georgia . . . has provided injunctive and damages remedies . . . for conduct that is *prohibited or protected or arguably prohibited or protected*" by the National Labor Relations Act ("NLRA")) (emphasis added); *id.* ¶ 47 ("[T]he provisions of federal labor law fully occupy the field of regulating conduct *prohibited or protected or arguably prohibited or protected*" by the NLRA and LMRA) (emphasis added).  But plaintiffs have affirmatively stated[7] that they will no longer pursue a facial challenge against these provisions (O.C.G.A. § 34-6-27 and O.C.G.A. § 34-6-28).  Thus, even if the most charitable interpretation of paragraphs 46 and 47 permitted the inference that plaintiffs intended to allege *Garmon* preemption, the bases of that claim—O.C.G.A. § 34-6-27 and O.C.G.A. § 34-6-28—are no longer part of plaintiffs' facial challenge, and therefore are not part of the controversy or alleged injury at issue in this case.  And because two of plaintiffs' three potential references to *Garmon* preemption are restricted to a discrete portion of the Amended Complaint that focuses on Code provisions pertaining to judicial remedies, there is no basis to impute these references beyond Section III of the Amended Complaint, especially considering that the rest of the

---

[7] *See* Joint Prelim. Report & Disc. Plan (narrowing plaintiffs' challenges to only three Sections of the Act: Sections 3(d), 4, and 5 (O.C.G.A. §§ 34-6-21(d); 34-6-25; and 34-6-26)).

Complaint is replete with references (though conclusory) to other types of preemption, such as field and conflict preemption.

*Second*, it is not obvious from the Amended Complaint that plaintiffs intend to invoke *Garmon* preemption in the only remaining allegation that plausibly could reference that doctrine. Indeed, that reference—"Federal labor law prevents the State . . . from providing their own regulatory or judicial remedies for conduct *prohibited or protected or arguably prohibited or protected*" by the NLRA"— merely recites *Garmon*-reminiscent language in the most cursory fashion. Am. Compl. ¶ 40 (emphasis added). Further confusing the nature of plaintiffs' preemption claims is the next paragraph, which appears to allege both field and conflict preemption without making any mention of the *Garmon*-like "prohibited or protected or arguably prohibited or protected" language from the preceding paragraph. *See id.* ¶ 41 ("[F]ederal labor law *fully occupies the field* of conduct in the *field* of selection of bargaining representatives. . . . 2013 Ga. Laws 192 . . . subjects Plaintiffs . . . to . . . regulations that supplant or *conflict* with federal labor law.") (emphasis added). Plaintiffs' affirmative narrowing of claims strongly suggests that they do not intend to allege *Garmon* preemption at all, let alone as the primary legal theory supporting their preemption claims.

Moreover, the potential *Garmon* reference in ¶ 40, like the two references in Section III of the Amended Complaint, pertains to judicial remedies—including those created by O.C.G.A. § 34-6-27, which is no longer at issue in this case. The inclusion of *Garmon*-type language in allegations pertaining to judicial remedies, but not in allegations pertaining to any other of plaintiffs' claims, suggests that plaintiffs' *Garmon* claims—even if they are intentional—should be disregarded because they are restricted to plaintiffs' now-abandoned claims about the Act's treatment of judicial remedies.

*Third*, even if plaintiffs' lone "arguably prohibited or protected" reference in paragraph ¶ 40 were construed as an intentional invocation of *Garmon*, the allegation fails to meet the pleading standards required to support a cause of action for preemption.[8]  Indeed, plaintiffs' singular contention that "[f]ederal labor law prevents the State of Georgia . . . . not only from setting forth standards of conduct inconsistent with the substantive requirements of the [NLRA and LMRA], but also from providing [its] own regulatory or judicial remedies for conduct prohibited or protected or *arguably prohibited or protected* by the [NLRA]" is no more than an attempt at a "formulaic recitation of the elements" of *Garmon* preemption.  *See*

_____

[8] This analysis also applies to the potential *Garmon* references formulaically set forth in paragraphs 46 and 47, and serves as a separate basis for dismissing those claims.

*Iqbal*, 556 U.S. at 678 (citing and quoting *Twombly*, 550 U.S. at 555). Offering no facts to support a purported claim for *Garmon* preemption, plaintiffs rely only on "threadbare recitals" to make "conclusory statements" about the Act being preempted. *See, e.g.*, Am. Compl. ¶ 27 ("29 U.S.C. § 186(c)(4) preempts all state laws"); *id.* ¶ 40 ("2013 Ga. Laws 192, Sections 2 and 3 are unconstitutional and violate 42 U.S.C. § 1983 because they regulate conduct that is governed and protected by federal labor law"); *id.* ¶ 41 ("Under the Supremacy Clause, federal labor law fully occupies the field of conduct in the field of selection of bargaining representatives"). *But see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). But bald legal conclusions are not enough to support a cause of action for *Garmon* preemption (or any other type of preemption), and this Court is not "bound to accept as true" these "legal conclusion[s] couched as [] factual allegation[s]." *Id.* at 678 (internal citations and quotations omitted). Plaintiffs' alleged claims of *Garmon* preemption should therefore be dismissed.[9]

---

[9] Defendants thus contend that because Plaintiffs fail to state a claim for *Garmon* preemption, it is not necessary to reach the Court's question about "[t]he impact, if any, of *Garmon's* exceptions to State regulation of conduct within the NLRB's jurisdiction." *See* Order at 38.

In sum, there are only three places in the Amended Complaint where plaintiffs even arguably allege *Garmon* preemption. Two of those allegations are no longer part of plaintiffs' case and therefore should not be considered. For the third reference, plaintiffs do not intend clearly to invoke *Garmon* preemption—and even if they did, the reference relates to an aspect of the Amended Complaint that plaintiffs are no longer prosecuting in this litigation. In all events, none of the three references meet the pleading standards required to support a cause of action for preemption, and thus cannot serve as a basis for *Garmon* preemption in this suit. Having affirmatively withdrawn any allegations or factual support for *Garmon* preemption, no viable preemption claims remain[10] and plaintiffs' Supremacy Clause claims should be dismissed as a matter of law.[11]

---

[10] To be sure, and as explained in their Motion to Dismiss and Reply in support of it, defendants also contend that plaintiffs have failed to state a claim for express, field, or conflict preemption as well. *See* Mot. to Dismiss at 10-21 [Dkt. 7 & 7-1]; Reply ISO Mot. to Dismiss at 1-6 [Dkt. 11]. To the extent the Court revisits analysis of other types of preemption, defendants incorporate by reference the arguments made in their Motion to Dismiss and Reply.

[11] For the avoidance of doubt, Plaintiffs fail to allege *Machinists* preemption and have not stated a claim based on that narrow doctrine. Though the Court referenced *Machinists* language in its Order by suggesting that Plaintiffs' mention of "occupation of the field" in paragraph 47 may have invoked the "free play of economic forces" instead of the more basic textual interpretation of the "entire field of labor law," *see* Order at 21-22 & n.6, there is no basis in the text of the Amended Complaint to support an actual or inferred allegation of *Machinists* preemption, and plaintiffs offer no argument to the contrary.

### III.   Intervening Case Law Underscores That Plaintiffs' Claims Must Be Dismissed Because the Supremacy Clause Does Not Confer A Private Right of Action and Plaintiffs Do Not Allege a Valid § 1983 Action Based on the NLRA.

By the plain text of their Amended Complaint, plaintiffs allege that the basis of their § 1983 claim is violation of the Supremacy Clause.  As a threshold matter, this claim fails because the Supremacy Clause does not create a private right of action—a principle that the United States Supreme Court recently affirmed in *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384-85 (2015). Moreover, plaintiffs cannot salvage their § 1983 action by now claiming that it is predicated on a violation of the National Labor Relations Act ("NLRA"), since plaintiffs have not shown how the NLRA confers unambiguous and specific rights on them to support a private right of action.  Nor does plaintiffs' reliance on *Golden State* and *Livadas* support their § 1983 claim, since those cases pre-date *Gonzaga* and do not support creation of a private right of action in a § 1983 case— especially where plaintiffs do not allege *Machinists* preemption.  For all of these reasons, plaintiffs' § 1983 claim fails and should be dismissed as a matter of law.

## A. **Plaintiffs' § 1983 Claims Fail As A Matter of Law Because They Are Premised on Alleged Supremacy Clause Violations.**

Throughout the Amended Complaint, plaintiffs allege that federal labor law "preempts under the Supremacy Clause" various sections of the Act and that the sections "*therefore* violate 42 U.S.C. § 1983."[12]  *See, e.g.*, Am. Compl. ¶ 28 ("Sections 4 and 5 are preempted and of no force and effect, and they *therefore* violate 42 U.S.C. § 1983"); *id.* ¶ 40 ("Sections 2 and 3 are unconstitutional and violate 42 U.S.C. § 1983 *because* they regulate conduct that is governed and protected by federal labor law."); *id.* ¶ 33 (because federal labor law allegedly "preempts under the Supremacy Clause," Sections 4 and 5 of the Act "*therefore* violate 42 U.S.C. § 1983); *id.* ¶ 42 (same for Sections 2 and 3 of the Act); *id.* ¶ 48 (same for §§ 34-6-27 and 34-6-28).  That is, plaintiffs treat their Supremacy Clause and preemption claims as the predicate of their § 1983 claim.

But the Supremacy Clause does not create a private right of action, let alone rights enforceable under 42 U.S.C. § 1983.  *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989); *see also, e.g.*, *Pirolo v. Clearwater*, 711 F.2d 1006 (11th Cir. 1983) (federal preemption claim premised on a violation of the Supremacy Clause is not cognizable under 42 U.S.C. § 1983).

---

[12] Italics in this paragraph are added for emphasis.

The United States Supreme Court recently affirmed[13] this principle in *Armstrong*, 135 S. Ct. at 1384-85 (even "[t]he dissent agrees with us that the Supremacy Clause does not provide an implied right of action"). In *Armstrong*, the Court examined whether private Medicaid providers could sue Idaho state officials under the Supremacy Clause and pursuant to § 1983 to enforce a section of the federal Medicaid Act. *See id.* at 1382-83. In analyzing the petitioners' case, the Court affirmed that "the Supremacy Clause is not the 'source of any federal rights,'" and that it "certainly does not create a cause of action." *Id.* at 1383 (citing and quoting *Golden State*, 493 U.S. at 107, 110)). Further confirming that "a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred,'" the Court held that the Supremacy Clause did not provide a private right of action, and that there was no implied right of action in the relevant provision in the Medicaid Act. *See Armstrong*, 135 S. Ct. at 1384, 1387-88 (citing and quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

It is this implied right of action that plaintiffs attempt improperly to create by alleging that the Act's preemption—and thus an alleged violation of the Supremacy Clause—serves as the basis for their § 1983 claim. Nothing in the

---

[13] The opinion in *Armstrong* was issued on March 31, 2015: after oral argument in

plain text of plaintiffs' Amended Complaint alleges any other specific right that would be enforceable under § 1983. Plaintiffs' § 1983 claim therefore fails as a matter of law and should be dismissed.

### B. Even If Plaintiffs' Amended Complaint Were Construed As Alleging That The NLRA Serves As a Basis For Their § 1983 Claim, Plaintiffs' Claim Still Fails As A Matter of Law.

A Section 1983 claim is "available to remedy a statutory or constitutional violation" when a plaintiff asserts "the violation of a federal right," and when the "interest the plaintiff asserts [is not] too vague and amorphous to be beyond the competence of the judiciary to enforce." *Golden State*, 493 U.S. at 106 (internal citations and quotations omitted). In evaluating the availability of a § 1983 claim, courts also consider whether "the provision in question was intended to benefit" the plaintiff. *Id.* (internal quotations omitted).

To the extent plaintiffs suggest that they have alleged violation of the NLRA, and not the Supremacy Clause, as the source of their § 1983 claim—and defendants contend that they have not—plaintiffs are both boot-strapping and impermissibly augmenting the four corners of their Amended Complaint. *See, e.g.*, *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (four

---

this case was held, but before the Court's July 20, 2015 Order was entered.

corners of a complaint govern a Rule 12(b)(6) motion).[14]   But even assuming

*arguendo* that plaintiffs successfully allege the NLRA as the basis of their § 1983

claim, their efforts still fail as a matter of law.

   *First*, plaintiffs at best allege only violations of federal *law*—and not

violations of federal *rights*.   *See, e.g.*, Am. Compl. ¶¶ 34, 37, 40, 45-47

(mentioning the existence of, and purported preemption under, the NLRA).   But a

"plaintiff must assert the violation of a federal right" and not merely a "violation[]

of federal law."   *Golden State*, 493 U.S. at 106 (internal citations and quotations

omitted).   *See also Gonzaga*, 536 U.S. at 283 ("[I]t is *rights*, not the broader or

vaguer 'benefits' or 'interests,' that may be enforced under the authority of"

§ 1983.") (emphasis in original); *Blessing v. Freestone*, 520 U.S. 329, 342 (1997)

("It was incumbent upon respondents to identify with particularity the rights they

claimed.").   Here, plaintiffs do not sufficiently allege violation of federal rights,

and instead merely reference a federal law—the NLRA—in hopes that they can

bootstrap their § 1983 claim into a valid cause of action.   Without allegations or

facts supporting their claim of a violation of rights, plaintiffs' mere reference to the

---

[14] "Fed. R. Civ. P. 12(b)(6) motions to dismiss standards [] apply to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299, 1303 (M.D. Ga. 2013) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002)).

NLRA does not support a cause of action and should be dismissed as a matter of law.

*Second*, even if plaintiffs can show that they are the intended beneficiaries of the NLRA, they do not allege that the NLRA confers an unambiguous right sufficient to support a § 1983 action. *See Golden State*, 493 U.S. at 106, 109; *see also Gonzaga*, 563 U.S. at 283. Instead, plaintiffs do nothing more than make generalized allegations of statutory violations, without showing how those statutes confer on plaintiffs an "unambiguous right" to a private right of action under § 1983. *See, e.g.*, Am. Compl. ¶ 28 (Sections 4 and 5 of the Act "depriv[e] Plaintiffs . . . of their *rights under federal labor law* and under the Supremacy Clause"); *id.* ¶¶ 34, 37 (conclusory allegation that certain conduct is "governed exclusively by federal labor law, through the [NLRA] and the [LMRA]"); *id.* ¶¶ 40, 45-47 (broadly referencing the NLRA and LMRA). Nor do plaintiffs point to any allegation that an Act provision violates a specific "right" conferred on plaintiffs under the NLRA—and to be sure, a sweeping reference to the statute as a whole does not suffice. Absent a specific allegation of an "unambiguously conferred right," plaintiffs' § 1983 claim fails as a matter of law. *See Gonzaga*, 536 U.S. at 283. To find otherwise would permit a construction of § 1983 so expansive that it would support a § 1983 claim any time a federal statute were broadly referenced in

a preemption case—a premise the Supreme Court rejected in *Golden State*, 493 U.S. at 108 ("[I]t would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority").

*Finally*, the two cases plaintiffs cite for the proposition that "the U.S. Supreme Court has held that the NLRA creates federal rights that are enforceable under § 1983"—*Golden State* and *Livadas*—are inapposite for that proposition because they were decided in the context of the *Machinist* preemption doctrine, which plaintiffs have not alleged in this case. *See* Pls.' Opp'n to Mot. to Dismiss at 12 [Dkt. 8]. Indeed, in *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994), the Supreme Court recognized a § 1983 action based on the NLRA where "the NLRA protects interests of employees and employers against abridgement by a State." But that determination, based the *Machinists* preemption framework,[15] was centered on protecting freedom *from* state interference, as opposed to *Garmon* preemption, which focuses on whether the state action is arguably within the

---

[15] As the *Livadas* Court recognized, the petitioner advanced a theory of *Machinists* preemption, while the United States Solicitor General, as amicus, described it as conflict preemption. However, neither party argued for application of the *Garmon* rule. *Livadas*, 512 U.S. 117 n.11.

NLRB's jurisdiction.   The Supreme Court recognized this distinction in both

*Livadas* and in *Golden State*:

> Thus, *Golden State II* observed that an NLRA pre-
> emption claim grounded in the need to vindicate the
> primary jurisdiction of the National Labor Relations
> Board, see [*Garmon*], *is 'fundamentally different'* from
> one stemming from state abridgement of a protected
> individual interest . . . a difference that might prove
> relevant to cognizability under § 1983.

*Livadas*, 512 U.S. at 133 n.27 (emphasis added).   Given the Supreme Court's

acknowledgement that *Machinists* and *Garmon* are "fundamentally different" in

the context of potential § 1983 actions, there is ample reason to question whether

the Court's reasoning in *Livadas* can be extended to a case that does not allege

*Machinists* preemption.   *See also* Blessing, 520 U.S. at 343 (in *Livadas*, the Court

"did not simply ask whether the NLRA created unspecified 'rights.'").   And

plaintiffs in this case offer no allegations and no case law to support this type of

extrapolation.   Moreover, implicit in plaintiffs' Amended Complaint is the

existence of an implied federal right conferred by the NLRA.   But *Gonzaga,* which

was decided after *Golden State* and *Livadas*, "reject[s] the notion" that Supreme

Court case law "permit[s] anything short of an unambiguously conferred right to

support a cause of action brought under § 1983." *Gonzaga*, 563 U.S. at 283.   Thus,

any argument about the NLRA creating an implied right of action does not

recognize the Court's admonition that "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms." *Id.* at 290.   As a result, plaintiffs fail to show how they have alleged a valid § 1983 action based on the NLRA, and their claim fails as a matter of law.[16]

### IV.   Additional Questions Posed By The Court

Defendants respond to the Court's additional questions[17] as follows:

- **Facial vs. As-Applied Challenge.** The Court asked whether "any provision of House Bill 361 can be invalidated by a facial challenge or whether an as-applied challenge is appropriate." Defendants respectfully suggest that, as a procedural matter, the question of whether an as-applied challenge is appropriate has been mooted by the plaintiffs' abandonment of any potential as-applied challenge.   And as explained in their Motion to Dismiss and Reply, defendants contend that plaintiffs' facial challenge fails as a matter of law.   *See*

---

[16] Even apart from failing to state a valid claim for *Garmon* preemption, plaintiffs have also failed to state a claim for other types of preemption, *see* Mot. to Dismiss at 10-21 and *supra*, p. 8 (bare assertions that do not survive under *Twombly/Iqbal*), and have further failed show how *Livadas*—which pertains to a preemption claim "stemming from state abridgement of a protected individual interest," 512 U.S. at 133 n.27—applies to plaintiffs' generalized claims of what appear to be conflict or field preemption.

[17] *See* Order at 38 (encouraging the parties to address certain questions in "subsequent proceedings").

Mot. to Dismiss [Dkt. 7 & 7-1]; Reply in Support of Motion to Dismiss [Dkt. 11].

- **Standing.**   The Court asked whether "plaintiffs have standing to challenge limitations on state regulations, and if they do, whether a challenge to the provisions must be brought as an as-applied challenge."   If this Court determines that plaintiffs' claims survive a Rule 12(c) motion for judgment on the pleadings, then discovery into plaintiffs' standing—including but not limited to the harms they allegedly suffered—will be necessary.[18]

- **Extent of Alleged Preemption.**  The Court asked whether "plaintiffs contend that House Bill 361 is entirely preempted or preempted only to the extent that it overlaps with NLRB's jurisdiction." To be sure, defendants contend that plaintiffs have altogether failed to state a claim for preemption.  Moreover, defendants cannot respond meaningfully to this question because plaintiffs have not alleged any facts or asserted any legal theories about the extent of House Bill 361's alleged preemption.  To the extent plaintiffs' claims survive this motion, defendants respectfully reserve the right to provide additional briefing on this question, and/or to reply to plaintiffs' response.

---

[18] By submitting this Rule 12(c) motion, Defendants do not waive the defenses (including standing) asserted in their Answer and expressly reserve the right to raise such defenses as applicable.

## CONCLUSION

For the above and foregoing reasons, defendants respectfully request that this Court grant their Motion for Judgment on the Pleadings and dismiss plaintiffs' remaining claims.

Respectfully submitted, this 8th day of September, 2015.

Respectfully submitted,

*s/ Sarah H. Warren*_____
Samuel S. Olens (Bar No. 551540)
   Attorney General
Britt C. Grant (Bar No. 113403)
   Solicitor General
Sarah Hawkins Warren (Bar No. 219208)
   Deputy Solicitor General
Kathleen M. Pacious (Bar No. 558555)
   Deputy Attorney General
Devon Orland (Bar No. 554301)
   Senior Assistant Attorney General

Office of State Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
404-463-0770
Fax: 404-651-8773
Email: swarren@law.ga.gov

## CERTIFICATION AS TO FONT

Pursuant to Local Rule 7.1D, I hereby certify that this BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS is submitted in Times New Roman 14 point type as required by Local Rule 5.1(b).

*s/Sarah Hawkins Warren*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8th, 2015, I electronically filed the attached Brief in Support of Defendants' Motion for Judgment on the Pleadings with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James D. Fagan , Jr.
Stanford & Fagan
191 Peachtree Street
42nd Floor
Atlanta, GA 30303
404-897-1000
Fax: 404-897-1990
Email: jfagan@sfglawyers.com

Michael Blair Schoenfeld
Stanford & Fagan, LLC
Suite 4200
191 Peachtree Street NE
Atlanta, GA 30303
404-897-1000
Email: michaels@sfglawyers.com

*s/ Sarah H. Warren*_____
Sarah Hawkins Warren
Deputy Solicitor General
Office of State Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
404-463-0770
Fax: 404-651-8773
Email: swarren@law.ga.gov